## C. B. CANFIELD v. F. A. JOHNSON ET. AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF TIOGA COUNTY.

| 144 | 61 |
| 27 SC 4629 | |
| 144 | 61 |
| e 33 SC 6473 | |

Argued May 4, 1891—Decided October 5, 1891.

(*a*) One firm, by its agent, entered into a parol agreement with another firm, by one of its members, whereby the latter firm was to take a contract for the erection of a soldiers' monument, each firm to do portions of the work, and to share equally with the other in the profits of the job when completed.

(*b*) Under this agreement, the plaintiff firm supplied the design, and was ready and willing to do the work undertaken by it; but the defendant firm, in violation of the agreement, let out to another firm the portion of the work to be done by plaintiff firm, and completed the job without the latter :

1. The joint contract for the erection of the monument was fairly in the line of the business of the defendant firm ; and it was therefore within the authority of one of its members to bind his copartner by an agreement with the plaintiff firm for a joint interest in the undertaking.

2. The agreement in question having been made with the defendants by the agent of the plaintiff firm, and the agent having testified as to its terms as made, it was error to exclude an offer to prove by the agent that the agreement was submitted to his principals and ratified by them.

3. But it was not error to exclude the opinions of members of the committee, that, from the conduct of the parties when the negotiations for the contract were made, there was an understanding between them that they were to have a joint interest in it, though offered as corroborative of the agent's testimony.

4. Upon proof of the agreement and of its breach, the plaintiff firm was entitled to maintain assumpsit to recover damages, and was not compelled to resort to account-render or to a bill in equity, for an accounting as under a partnership relation formed and carried out.

Statement of Facts.

5. As proof of defendants' profits on the job, one half of which was recoverable by the plaintiff firm, the testimony of the persons who made the monument and shipped it, the opinions of expert witnesses, and the original freight bills, were relevant and competent evidence as to the cost to defendants of the making, shipping and setting.

6. The declaration claiming compensation for the use of the design after which the monument was erected, as well as upon the entire agreement, it was error to exclude evidence that it was furnished by plaintiff firm and was original, on the ground that there were no letters-patent or copyright upon it.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 84 July Term 1890, Sup. Ct.; court below, No. 207 April Term 1887, C. P.

On March 3, 1887, C. B. Canfield, surviving partner of C. B. Canfield and others, doing business as the New England Monument Company, brought assumpsit against F. A. Johnson and A. J. VanDusen, doing business as Johnson & VanDusen. The declaration, filed August 8, 1887, was in the common counts, preceded by a special count averring in substance :

That in 1885, the George Cook Post, G. A. R., No. 315, Department of Pennsylvania, was offering to enter into a contract with plaintiffs and others for the erection of a soldiers' monument in Wellsboro ; that about September 15, 1885, it was verbally agreed by and between the plaintiffs and the defendants that the defendants should enter into a contract with said post to furnish and erect a soldiers' monument for the sum of $4,300, to be paid by said post when the monument should be completed ; that the plaintiffs should furnish certain designs and photographs from which the said monument should be constructed, and that the work of making, erecting and completing said monument should be done on shares between the plaintiffs and defendants, and that the profits should be divided equally between the plaintiffs and the defendants, share and share alike ; that, in pursuance of said verbal contract the defendants, on February 10, 1886, did enter into a contract in writing with said post, whereby they agreed to furnish, make, and erect a soldiers' monument in granite, at Wellsboro, for

Statement of Facts.

and in consideration of which the said post agreed to pay the defendants $4,300 ; that the plaintiffs furnished the said designs and photographs, and did and performed all and singular the things agreed to be done on their part, so far as they were permitted to do the same by said defendants ; that the said soldiers' monument was erected, completed and accepted, and the said post, on or about March 13, 1887, paid to the defendants the sum of $4,300 for the erection and completion of said monument as agreed in said contract ; that $1,000 of said sum were profits over and above all costs and expenses of furnishing, making and erecting said monument ; whereupon, in consideration of the premises, the said defendants, on March 13, 1887, were indebted to the plaintiffs in the sum of $500, with interest on the same ; and being so indebted, promised, etc., yet the said defendants disregarded their said promise, etc. The defendants pleaded the general issue.

At the trial, on April 15, 1890, George A. Douglass, called for the plaintiff, testified that in 1885 and 1886, he was the western manager and agent of the plaintiff firm ; that in the spring of 1885, he submitted to a committee of the G. A. R. post 315, contemplating the erection· of a soldiers' monument, certain designs, one of which, design No. 161, was recommended for acceptance ; that the witness was again in Wellsboro on September 15, 1885, and again before the committee to make a bid for the contract ; that in a private conference with Mr. Johnson, of the defendant firm, it was agreed that the defendants should bid $4,300, and the plaintiff firm $4,460, for the purpose of throwing the contract in favor of the defendants ; that the monument was to be built by the plaintiffs and shipped to the defendants, who would build the foundation and would take charge of the monument when it arrived, and have the setting of it ; that the bids of the plaintiffs and defendants were sent in to the committee in pursuance of that agreement. The witness testified, further, that he received a letter dated November 28, 1885, purporting to come from Johnson & Van-Dusen, which (being identified and read), stated that the post had gone back on the action of the committee in regard to the monument, and that " a Mr. Laird was here yesterday and put a bid on your design, out of Green Mountain granite, and changes the statue; his bid is $2,700 ; " that witness received

Statement of Facts.

a telegram, also, from Johnson & VanDusen asking him to come to Wellsboro and bring with him his designs; that on December 4th the witness came on, when he and Mr. Johnson had a further conversation, and again prepared their bids as before for submission to the committee on December 5th; that the bids of the plaintiffs and the defendants were again submitted as they were before, and the bid of the defendants accepted; that the witness communicated to his principals the arrangement made, on his return to New York.

Plaintiff's counsel: You may state whether they accepted the arrangement, and proposed to go on and carry it out as you had agreed to? Objected to as incompetent.

By the court: Objection sustained; exception.[1]

Q. State what you informed the plaintiffs, on your return to New York? Objected to.

By the court: Objection sustained; exception.[2]

The witness identified a copy of a letter written and mailed by himself to Johnson & VanDusen on January 13, 1886, and a letter to him in reply, signed by Johnson & VanDusen and dated January 18, 1886. The former letter, addressed by G. A. Douglass to Johnson & VanDusen, gave an estimate of the cost of the monument as follows: Pedestal, $1,408; soldier, $1,350; foundation, cartage, setting and freight, say $525; in all, $3,283; "margin, $1,017." The letter then proceeded:

"We have figured and twisted this down to the very bottom; and yet under the circumstances I do not know why we should grumble at the margin. If ordinary work would have answered, the monument could have been placed for considerable less money, but considering the fact that I and yourselves made such a strong handling of good workmanship, and the young volunteer soldier model, we could not well assume any other position." . . . . .

The letter of Johnson & VanDusen to Mr. Douglass, dated January 18, 1886, was as follows:

"Dear sir: Yours of January the 13th received, and in reply will say that they get along slow raising the money for the monument, but we get lots of communications from firms wanting us to let them the job, and it would surprise you to know how low some of them will do it, and are willing to bind themselves in contract as tight as we are a mind to make it; but I

think it will be some time before the monument is built. I think this is all at this time."

The witness testified, further, that after the foregoing he never received any communication from the defendants; that in December, 1886, he visited Wellsboro and found that the monument had been erected, having been put up by Johnson & VanDusen.

Plaintiff's counsel proposed to ask the witness, who made the drawing No. 161, and whether any before that had ever been constructed with the young volunteer soldier placed upon the pedestal, as described in the drawing placed here in the court, so far as he knows. Objected to as immaterial and incompetent.

By the court: We know of no law giving exclusive right to a work of art such as the design in question, as a matter of property, unless it be, in this country, under the laws of the United States granting such right by letters-patent or copyright; and as it does not appear in the offer to show that the design in question was especial property, in pursuance of the arrangement between the plaintiffs and defendants in this case, we regard the evidence as immaterial, and the objection is sustained and evidence rejected; exception.[3]

The plaintiff, alleging that the defendants, in violation of the agreement with the plaintiff firm, entered into and carried out an agreement with Wells, Lamson & Co., of Barre, Vt., to make a monument after the design No. 161, and put the same on the cars to be forwarded to the defendants at Wellsboro, for the sum of $2,016, offered in evidence the depositions of S. O. Wells, George Lamson and J. K. Perrie, taken at Barre, Vt., to prove that fact, and the estimates of the witnesses as to the freight on the work to Wellsboro, and the cost of foundation and cartage.

Defendants' counsel object to so much of the depositions of the witnesses named, as relates to the estimate of the probable cost of transporting the monument from Barre, Vt., to this place or any other point, as incompetent, because the estimate of the cost of transportation is not the best evidence. The monument having been transported over lines described in the depositions, the exact cost can be ascertained by the testimony of the persons to whom the freight was paid, or those who paid

### Statement of Facts.

it; and in this action, if there is a recovery the defendants are entitled to credit for the exact cost paid for transportation, if paid in good faith, without reference to rates that might have been obtained in the judgment of the witnesses.

By the court: The objections are sustained, and the evidence referred to is excluded; exception.[4]

H. J. Eaton, called by the plaintiff, testified that in 1886 he was the station agent of the Fall Brook Coal Co. at Wellsboro, and produced a way-bill of August 10, 1886, made out by the agent at Corning, for three boxes of granite, upon which there were freight-charges of $84.50 at Corning, and $24 at Wellsboro; in all, $108.50. The plaintiff offered the way-bill in evidence.

Defendants' counsel object to so much of the offer as proposes to give in evidence the way-bill, for the reason that the witness who produces it says that it is but the declaration of the agent of the Fall Brook Coal Co. at Corning; and object to their showing the payment of the freight, for the reason that the freight is not identified as a portion of the monument in controversy.

By the court: The objection to the way-bill, as stated, is that it is a mere declaration of a person not a witness. We think that objection a proper one, and for that reason the offer of the bill is rejected. This ruling is not intended to bar the plaintiff from any proof by this or any other witness, of the delivery of the freight referred to; exception.[5]

The witness then gave testimony tending to show that this lot of freight was paid for and delivered to the defendants.

Plaintiff's counsel (showing witness a paper): Q. State if, as agent of the Fall Brook Coal Co., you received a way-bill about September 20th against Johnson & VanDusen?

"Defendants' counsel object to the question in the form it is put. They are asking him in reference to the bill he has in his hand. Objected to, further, for the reason that the bill, if competent evidence, is the best evidence; and the bill not being competent, it is not competent for the witness to state the contents of it."

By the court: The objection is sustained; exception.[6]

Hugh Young, called for plaintiff, plaintiff's counsel proposed to prove by the witness, and by Mr. Houghton, the chairman of

the committee, and other members of the soldiers' monument committee who were present at the meeting already described by the several witnesses, held in the prothonotary's office in September and December, 1885, that from the conduct and actions of Mr. Johnson and Mr. Douglass in reference to the bids and bidding, the witness and the other members of the committee were of the opinion that there was an understanding and arrangement between Mr. Douglass representing the plaintiffs in this case, and Mr. Johnson, one of the defendants, by virtue of which the plaintiffs were to build the monument and ship it here, and the defendants were to do the foundation work, and place the monument in place when it arrived; this evidence is offered for the purpose of corroborating the statement made by Mr. Douglass, who has already testified for the plaintiff. Defendants' counsel object to the offer as incompetent and irrelevant.

By the court: The first objection is sustained, and the evidence rejected for that reason; exception.[7]

George A. Douglass, being recalled by the plaintiff, testified that he had been in the business of selling and delivering monuments for twenty-five years, and had knowledge of the cost of delivering monuments similar to the one in controversy from the freight-station, and the cost of building the foundations and putting them in place. Counsel then asked the witness to state the cost of removing the granite blocks of which the monument in question was constructed, from the station at Wellsboro to the public square where it was erected; also, to state the cost of placing the foundation under the monument, as per the specifications of the contract with the post in evidence; also, the cost of placing the monument on the foundation when made; this for the purpose of showing the cost of the monument as it was completed. Objected to as incompetent.

By the court: Objection sustained; evidence rejected; exception.[8]

Q. Mr. Douglass, what would it cost to construct and finish the young volunteer soldier, as contemplated by you in the bid which you put in? Objected to as incompetent.

Plaintiff's counsel proposed to prove by the witness on the stand, that the cost of making and finishing the statue of the young volunteer soldier, as contemplated by the bid which he

put in, to have been finished with the requisite skill of the artists employed by his company, would have actually been the sum of $1,850 ; and that the one now upon the monument, while it has the general outlines of the statue as exhibited in the drawing, did not cost that amount by the sum of $600 ; or in other words, that there is a difference in the cost of the soldier as placed upon the monument and the one contemplated to be constructed by the plaintiffs in this case, when they entered into the agreement with Johnson & VanDusen. Objected to as incompetent.

By the court: Objection sustained ; exception.[9]

Q. State Mr. Douglass if there is a recognized price among the Artists' league or association, with reference to the price of drawings for the kind of work as shown by this drawing ? Objected to as incompetent and irrelevant under the pleadings in this case.

By the court: We regard it as wholly immaterial in this case whether the design cost much or little. The action is brought, as alleged, for a breach of the contract, a part of which, as appears in the contract shown in evidence by the witness on the stand, was that the plaintiffs should furnish the design ; therefore, the objection is sustained ; exception.[10]

The case being closed on the testimony, the court, MITCHELL, P. J., charged the jury in part as follows :

In the answers that we shall make to the points, we will say what we think it is proper to say in relation to the facts. As the jury are not to consider the facts, it is not necessary for us to review the evidence in the case.

Defendants' counsel ask the court to charge the jury :

1. That, under the pleadings and evidence, there can be no recovery in an action of assumpsit, and the action should have been account-render.

Answer : We say to you, gentlemen, that under the pleadings and evidence in this case there can be no recovery in this form of action.[11]

The reason for that, as we understand it, is that the relations of these parties, if they were as testified to by the witness Douglass, would constitute a partnership relation to such an extent as to require an account to be stated, or so fully ascer-

tained by the evidence introduced on behalf of the plaintiff, as to make certain the amount of the profits in this transaction.

Under the evidence as we consider it, there is no such proof of the amount of the profits in this transaction as would justify a verdict in this case for the plaintiff. A large number of cases have been brought to the attention of the court which have arisen in Pennsylvania, in which, where the transaction was a single one, where the amount to be recovered was rendered certain by the testimony in behalf of the plaintiffs, our courts have held that, although there might be such a limited partnership relation as is alleged to have existed in this case, the action of assumpsit might be maintained notwithstanding, and the plaintiffs would not be required to resort first to what is known in law as an action of account-render, or a bill in equity, in order to have the account stated between the parties. So far as we have been able to examine the facts, in all these cases, we think the one here trying is plainly to be distinguished from all of them, in respect to the facts in this case and the facts in those cases. As we remember them, there is involved in none of those cases any question of liability of the parties to any third parties, or liability of any third party to the persons associated in the enterprise in question. In this case, as we think, under the evidence it does not appear that this work was completed without incurring such obligations, on the part of the defendants, if they were to be primarily liable, or on the part of the plaintiffs, if they were to be jointly liable, for whatever was done in the execution of that work.

The contract in evidence specifies particularly what the character of the work was. It was not only to be a monument of a certain description, but it was to be upon a foundation, the specifications for constructing which are set forth in the contract itself. There is in the case no proof as to what was done by these defendants in the construction of that foundation, as we remember; no proof of what was done by them in placing the monument upon its pedestal; no proof of the expense of erecting it; it appearing that one of the defendants, in pursuance of his duties and in the exercise of a proper discretion, went to the place where the stones were quarried and dressed, and he must necessarily have incurred in doing so some considerable expense. No evidence is before the jury to satisfy the jury and the court what these expenses were.

Charge of Court below.

It has been argued before the court, that the burden of proof as to all these matters was properly upon the defendants; and that would be so in a proper case where the defendants are required to account; but in the view we take of this case the defendants are not required to account in that manner, especially as it has transpired in your hearing, that the defendants, partners as alleged in this transaction, are not allowed under the laws of Pennsylvania to make a statement of their accounts before the jury on the trial of this case. They would be required to do so if the form of action were different, but in this form we think they are not charged with that duty. So we take a different view of that question than is taken by the counsel for the plaintiff. We do not think the burden of proof is upon the defendants to show in answer to the proof made by the plaintiffs, as to the amount that they received, how much they might in equity and right be allowed to set off against the total amount they did receive for this monument, even admitting there was such a contract between these parties as would make them accountable for any profits.

2. Even though an action of assumpsit would lie, the plaintiffs have not shown what the profits of the partnership transactions were, and for that reason they are not entitled to recover in this case.

Answer: What we have said already is substantially an affirmance of this point.[12]

3. Johnson had no power to bind the firm of Johnson & Van-Dusen by an agreement to enter into a partnership with the plaintiffs in the construction and placing of the Soldiers' Monument, without the express assent of VanDusen; and as there is no evidence that VanDusen had any knowledge that his partner had made such an agreement, if one was made, until about the time this suit was brought, there can be no recovery in this suit.

Answer: Partners are generally agents for the partnership of which they are members, in the transaction of the proper business of the partnership in question. They have not a general power, by reason of their partnership relation, to enter into contracts that are specially binding upon the partnership, without regard to the character of them. The contracts which partners may make must be within the line of business under-

taken by the partnership. Now, in this case, the allegation is that one of the partners entered into a contract by which the partnership was not to have the profits of that which was undertaken to be done in its business, but was to have only one equal half of the amount of the profits in the business. We say to you, gentlemen, as we understand it the law does not give such authority to a partner; and in this case, unless there were evidence to show that this arrangement, if it was made by Johnson, was at a subsequent time assented to by Van-Dusen, ratified by him, the partnership would not be bound by that contract; and we think there is not sufficient evidence in the case to justify a verdict based upon a conclusion that Van-Dusen ever did expressly, or by implication even, assent to that contract, if such a one was made. Therefore, we say, in this case, there can be no recovery on the contract shown in evidence, because there was no such authority in the person who is alleged to have made it as to authorize it to be made in behalf of these defendants; and no such evidence as establishes such an express or implied ratification by the other partner as would hold him bound as a member of that firm, and the firm itself bound by the contract; especially, as under the evidence there was no proof of even any knowledge on the part of VanDusen, so far as we remember the evidence, that any such contract was even alleged to have been made prior to the undertaking and completion of this work. Therefore, we assume as to Van-Dusen, that, under the evidence, this contract was undertaken by the firm of Johnson & VanDusen as any other contract would be undertaken by that firm where either of the partners had any knowledge of the existence of a special contract, obligatory upon the partnership.[13]

4. The alleged combination and contract between the New England Monument Company, and Johnson & VanDusen, if made, was unlawful and a fraud upon the Grand Army post, and there can be no recovery upon it.

Answer: If the case turned upon this question, gentlemen, it would give us some difficulty to arrive at what we would regard a proper determination of it; but with the examination we have been able to make we do not feel that we would be justified in affirming this point as it is here presented. There are many cases where contracts are made which are contrary

Charge of Court below.

to law, or public policy, such as contracts to affect the legislative, executive or judicial action of the government; contracts affecting the rights of parties concerned in any judicial proceedings, especially about public sales; contracts affecting the rights of persons to be administrators upon the estates of decedents, and many others, which the law says, by reason of their being illegal or contrary to public policy, the contracts made are void. That the one alleged and proven, so far as it is shown in this case, was of that character, we are not disposed to say under this point. . . . .

6. Under all the evidence the verdict should be for the defendants.

Answer: We necessarily affirm this point. It becomes our duty in this case, and it is never a pleasant one for this court, to take the responsibility of directing a verdict for the defendants, which we will now do.[14]

Gentlemen: Our attention is called by one of the attorneys for the plaintiffs to another branch of this case. There is in the declaration in this case a count charging these defendants with liability for the furnishing of the design for this monument; and it has been argued before the court that there is such property in this design as would justify a verdict for the plaintiff for the furnishing of this design, if nothing more could be recovered in the case.

We take a different view of that question. As we understand it, in this country there is no exclusive right of property in any citizen as against all other citizens, in designs of this character, unless that right is secured in a manner pointed out by an act of congress, which allows persons to take out letters-patent, or what is strictly called a copyright for such work. So that, as we think, there could be no lawful recovery for the furnishing of this design as used in this case. There is no doubt, we think, under the evidence at least, that the jury would be justified in concluding that the plaintiffs, in fact, furnished the design from which mainly this monument was designed and constructed, but as we have already stated, the design was not strictly followed. It was modified in material respects. Aside from that, the evidence shows also that this design was so published in this county hereabouts, as to justify these defendants in taking it and using it themselves, making

Opinion of the Court.

it a design, either in their proposals by way of bids, or as was
probably the case, under the evidence here, in their subsequent
arrangement with the Grand Army post as to how this monu-
ment should be constructed; because, there is considerable tes-
timony·in this cause showing that a considerable time after the
bids were put in this matter of changing the design was con-
sidered by the post, and certain changes were made by author-
ity of the post. As we understand it, the contract in the case
shows an agreement to construct a monument, not such as
they set out in the design here, but a different one, and the
one which is erected upon the green here in the village of
Wellsboro.

—The jury returned a verdict for the defendants. Judg-
ment having been entered, the plaintiff took this appeal, as-
signing for error:

1–10. The refusal of the plaintiff's offers.[1 to 10]

11–14. The affirmance of the defendants' points.[11 to 14]

Mr. Jerome B. Niles (with him Mr. Stephen F. Wilson, Mr.
Aaron R. Niles and Mr. Alfred J. Niles), for the appellant.

Upon the eleventh assignment, counsel cited: Galbreath v.
Moore, 2 W. 86; Cleveland v. Fararr, 4 Brewst. 27 ; Reeside
v. Reeside, 49 Pa. 331; Brubaker v. Robinson, 3 P. & W. 295 ;
Meason v. Kaine, 63 Pa. 336; Finlay v. Stewart, 56 Pa. 183 ;
Wright v. Cumpsty, 41 Pa. 103; Kutz v. Dreibelbis, 126 Pa.
335; Gillis v. McKinney, 6 W. & S. 78; Borrell v. Borrell, 33
Pa. 492; Hamilton v. Hamilton, 18 Pa. 20. Upon the twelfth
assignment: Mitchell v. Beatty, 1 Phila. 133 ; London Savings
Fund Soc. v. Bank, 36 Pa. 498; Edwards v. Tracy, 62 Pa. 374.

Mr. M. F. Elliott (with him Mr. G. W. Merrick and Mr. F.
E. Watrous), for the appellees.

OPINION, MR. JUSTICE GREEN:

The contract in question between these parties was made
with the defendants by an agent of the plaintiffs. On the trial,
the plaintiffs, having examined the agent who made the con-
tract, and proved by him its terms as he had made it, proposed
to prove that he informed them of what he had done, and that
they thereupon accepted the contract and undertook to execute

Opinion of the Court.

it.   This offer of proof was rejected by the learned court below.
It is difficult to understand upon what principle this testimony
was rejected.   The contract having been made through the
intervention of an agent, it was clearly competent to show that
the action of the agent was communicated to his principals,
that they accepted and ratified the contract as he had made it,
and that they undertook to carry it out.   It is only in that way
that the assent of both parties to the contract can be shown,
and their willingness to be bound by its terms established.   The
first and second assignments are sustained.

The plaintiffs proved by overwhelming testimony that the
design No. 161 for the monument was adopted by the Grand
Army post and the committee, and that this design was fur-
nished by the plaintiffs.   In the course of putting in the testi-
mony on this subject, the plaintiffs offered to prove by whom
the design was prepared, and that no similar design had been
made by others.   This offer was rejected, for the singular rea-
son that no letters-patent or copyright of the design had been
taken out by the plaintiffs, and therefore they had no exclusive
ownership therein.   We cannot possibly assent to such a doc-
trine.   Most assuredly, when an architect prepares a design for
a building, for one who is about to erect such a structure, he is
entitled to be paid for it without being obliged to have it
patented or copyrighted.   He would be entitled to compensa-
tion for it whether it was accepted or not, unless he had ex-
pressly agreed otherwise; but certainly, where his design was
accepted and actually used by the party to whom it was fur-
nished, it would be a perversion of justice to deny compensation
to the designer because he had no patent or copyright for his
design.   In this particular case, the proof was also admissible
because it tended strongly to corroborate the plaintiffs' claim
to having made the contract in question with the defendants.
We therefore sustain the third assignment, and we also sustain
the tenth, because the narr counted as well for compensation
for use of the design as upon the entire contract alleged.

We are quite unable to understand why the offers of testimony
covered by the fourth, fifth, sixth, eighth, and ninth assignments
of error were rejected.   They related to the subject of the cost
of building the monument and pedestal upon which it was to
stand, the cost of transporting them to the place where they

were to be erected, and the cost of setting them up in place. These were all perfectly legitimate matters of proof; indeed, absolutely essential in order to enable 'the plaintiffs to recover upon their theory of the case; and the sources of the proof were those from which the best attainable information could be obtained. The persons who actually built the monument which was in reality erected by the defendants, and who shipped the same to the defendants, were not allowed to testify to the cost of the shipments, though they named the weight and cost per hundred pounds and the final amount paid; the persons who participated in the transportation of the monument and pedestal from the place where they were made to the place where they were set up were not allowed to testify to their knowledge upon that subject; the original freight-bills, containing upon their face the precise amounts of freight paid, were rejected for untenable reasons; and the testimony of an experienced and competent person, having an extensive, and claiming to have an accurate knowledge of the cost of building such monuments and pedestals as the one in question, and of the cost of removing and transporting them, and of setting them up in place, was entirely rejected, and the plaintiffs thereby deprived of the opportunity of proving the very essential facts of their case. The objections to these offers were that they were incompetent and irrelevant. Irrelevant they certainly were not, because they related to the very matters in controversy. They tended to prove directly how much profit the defendants had made by violating their alleged contract with the plaintiffs. Neither were they incompetent, because the persons and the papers offered were the original persons and papers from whom and from which original and material information could be obtained. We have examined all these offers of testimony, and the objections to them, and we are clearly of opinion that they should have been allowed.

The objection which seems to be chiefly urged to their admissibility, and which appears to have controlled the court below, is that the offers do not furnish the precise and exact cost in the actual dollars and cents paid by the defendants; and it is argued that the plaintiffs might have called the defendants as witnesses, and proved by them the precise amounts paid in each instance, and, as this was the best evidence, any other testimony was for

Opinion of the Court.

that reason incompetent.   We cannot avoid an expression of sur-
prise that such an objection should have prevailed.   It amounts
to this, that where a plaintiff who claims damages for the breach
of a parol contract for the division of the profits of a mutual
transaction, seeks to establish his claim, he must call the de-
fendants to prove the exact amounts paid by them in the course
of the transaction, on penalty of having all other testimony on
that subject rejected.   There is no such rule of evidence.   The
rule that the best evidence of a fact must be produced, if it can
be had, has no such meaning.   It requires that where two dif-
ferent grades or qualities of proof exist, that which is the best
shall be adduced, if practicable ; as for instance, the contents
of a writing must be proved by the production of the writing,
before secondary evidence can be given.   But that rule has no
application to a choice between witnesses, where both have le-
gitimate knowledge of the subject-matter of the inquiry.   Some
may have a better knowledge than others, but that will not
exclude the knowledge of those who are the less informed, if
it is otherwise competent.   It is for the jury to judge of the
sufficiency of the proof.   So, also, the proof offered by the
expert testimony of Mr. Douglass was entirely legitimate, and
should have been received.   He had a competent experience
to qualify him for proving the probable cost of building and
transporting the monument and pedestal, and of setting them
up, and therefore he was a competent witness for that purpose.
Even if there were others who had a better knowledge than
he, that would not exclude his testimony.   Least of all would
it be excluded because the defendants knew exactly what they
had paid, and therefore would be the only persons who could
testify on that subject.   Non constat, that they paid more than
they should have paid, and thus deprived the plaintiffs of more
than their legitimate share of the profits which might have been
made had the defendants performed their contract literally.
The proof of what the defendants did pay rested with them,
and their right to give such proof was not at all impaired by
admitting the plaintiffs' offers.   After the evidence was all in,
the whole case would be for the decision of the jury.   All these
several assignments of error are sustained.

The seventh assignment is not sustained.   The mere opinions
of the members of the committee, as to whether there was a con-

tract between the plaintiffs and defendants, would not be evidence to prove that fact.

We do not agree with the learned court below in holding that there could not be a recovery in the action of assumpsit. The allegations and proofs of the plaintiffs were that the defendants had not carried out the contract with them. They had not engaged in the execution of a contract of partnership, or any contract for their mutual advantage or profit. On the contrary, they had proceeded to have the monument and pedestal built and placed exclusively on their own account and for their own benefit and advantage, and had thus violated the contract which the plaintiffs claimed and gave evidence to prove. In other words, they had broken the contract of partnership or joint interest, and therefore no such contract was performed or executed. In such circumstances, the injury or breach which gives a legal remedy is a violation of the contract of partnership, and not its execution and a consequent partnership liability. Hence a partnership bill which lies between persons who actually are partners, and for the settlement of the partnership accounts, is not the proper remedy, simply because, although the defendants agreed to become partners with the plaintiffs in this transaction, in point of fact they did not, and hence the relation did not exist. The action, therefore, must be regarded as an action to recover damages for the breach of a contract to become partners, and for that purpose the proper remedy would be an action of assumpsit on the undertaking. But, of course, while all this is true, the measure of damages would be in accordance with the terms of the contract, to wit, one half of the profits which the defendants did make, or ought to have made, in doing the work in question. Hence it was quite legitimate for the plaintiffs to claim in the narr and to prove on the trial, that they were entitled to have the one half of those profits from the defendants, and to give evidence as to what those profits were or should have been. Moreover, as this was a single transaction, without any complicated accounts to adjust, we would incline to hold, were it necessary to do so, that the case came properly within the somewhat numerous decisions of this court, in which it is held that, where the transaction is single, without complicated accounts, and there are no debts to be adjusted, a bill in equity is not necessary for the settlement of the accounts, but

Opinion of the Court.

an action of assumpsit will lie.    Instances of this are to be found in Wright v. Cumpsty, 41 Pa. 103; Cleveland v. Fararr, 4 Brewst. 27; Galbreath v. Moore, 2 W. 86; Meason v. Kaine, 63 Pa. 336.    It is not necessary to rest the decision of the present case upon this principle, however, as we regard the proceeding as an action to recover damages for the breach of a contract to enter into a partnership or joint relation, and not as a proceeding to settle partnership accounts.    The eleventh assignment is sustained.

While it may be that there was not sufficient evidence to show what the profits made by the defendants were, that result was largely due to the rejection by the court of the plaintiffs' offers of testimony, and the plaintiffs could not fairly be held responsible therefor.    Technically, therefore, the defendants' second point may have been correctly answered, in view of the actual state of the admitted testimony, and for that reason only we do not sustain the twelfth assignment.

The thirteenth assignment is sustained because we do not agree with the learned court below in holding that there was no evidence that VanDusen had any knowledge of the contract made by Johnson, and that Johnson had no authority to bind the firm by such a contract as is alleged by the plaintiffs.    It was a contract fairly in the line of their business, and therefore within the authority of a partner.    Moreover, Johnson, as a partner, was the authorized agent of the firm for the making of contracts within the scope of the firm's business, and we are of opinion that this contract was within that class.    In addition to this, however, the letter of January 18, 1886, to Douglass, signed by the firm name, and in direct answer to the one written by Douglass to the defendants on January 13th, just preceding, would be quite sufficient to take this question of VanDusen's knowledge to the jury.    The letter of the firm to Douglass, of November 28, 1885, is in the same category of testimony.    But it would require a most violent presumption, against all the probabilities of the case, to declare that VanDusen had no knowledge of the contract made by Johnson with the plaintiffs, and we do not consider that the court had any right to make such a presumption as a matter of law.    It was for the jury at the best, and there were plenty of facts and circumstances in

the case to enable the plaintiffs to challenge the correctness of any such presumption by the jury.

A matter much discussed by the counsel for the defendants was the legality of the contract made, or alleged to have been made, by the plaintiffs with the defendants. It was decided against the defendants by the court below, and is not before us. We therefore do not consider it, but that circumstance must not be taken as a concession that there was error in the court's ruling on that subject.

While there was perhaps some evidence that the defendants had made profit out of their work, it was scarcely specific enough, or complete enough, to leave to the jury, and we therefore do not sustain the fourteenth assignment. The fault, however, was due to the improper rejection of the plaintiffs' offers of proof, and they cannot be regarded as responsible for the insufficiency of the proof.

    Judgment reversed, and new venire awarded.

Mr. Chief Justice PAXSON noted his dissent.