## Rush Centre Creamery Co. *v.* R. H. Hillis, Appellant.

*Partnership—Contracts to create are enforceable at law.*

Contracts for the creation of a partnership are enforceable at law, and agreements for contributions may be sued for directly on the contract.

*Partnership—Agreement to contribute to enterprise on pro rata basis enforceable.*

Where an agreement is made to contribute to a partnership enterprise and the cost of the enterprise is not definitely known by its promoters, an agreement is binding although no definite sum was subscribed; there can be no objection to such an agreement, in that the cost was to be borne ratably according to the respective interests of the parties in the project.

Argued Jan. 19, 1897. Appeal, No. 36, Jan. T., 1897, by defendant, from judgment of C. P., Susquehanna Co., Nov. T., 1894, No, 291, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Appeal from justice of the peace. Before SEARLE, P. J.

The action was assumpsit to recover the sum of $30.36 from the defendant.

The facts sufficiently appear from the charge of the court, which is as follows:

" The issue which you have been sworn to try is one wherein the Rush Centre Creamery Company is plaintiff and R. H. Hillis is defendant, and comes into this court by appeal. It appears from the evidence in this case that previous to the year 1893 certain citizens of this county entered into an agreement in writing, which has been read to you, and which I will read again so that you may fully understand it:

[" We the undersigned citizens of the County of Susquehanna, State of Pennsylvania, unite and join together for the purpose of building a creamery building and purchasing and putting therein the necessary machinery, for the purpose of a proper and practical Creamery.

" We have agreed that the name of our association shall be the Rush Centre Creamery Company, and the building to be by us erected for the purpose aforesaid is to be built on the land

leased by us from D. J. Hillis, of Rush Township, County and State aforesaid. Now in furtherance of our project of erecting a Creamery, and that the same when erected with the necessary machinery shall become and be and form a paying investment, we and each of us whose names are hereunto signed have agreed with all the other persons whose names are hereunto signed that we will send to the said Creamery, as soon as the same is ready for business, the milk pure as taken from the cow from the number of cows placed opposite our respective names, and that we will continue to furnish to the said Creamery the milk from the number of cows set opposite our names, for, and during the milk season, for the term of five years.

" We have agreed that the business of the said Company shall be conducted by three persons to be called trustees, and one trustee to be elected annually each year. We have agreed that the trustees shall be elected on the first Tuesday of December each year, and the persons herein named shall be the trustees for the present term (Blank.)

" And as it is necessary for us to raise the sum of (blank) dollars for the purpose of erecting and building, and putting therein the necessary machinery, besides the amount of subscriptions, we have agreed among ourselves that such sum of money as shall be necessary for the purpose aforesaid shall be borrowed by the said trustees for the year A. D. 1893, as aforesaid, and that they shall give the obligations of the said Rush Centre Creamery Co. for such money as they shall borrow, and we and each of us agree that the money so borrowed shall be paid as follows : In one year the interest and one fifth the money borrowed. In two years the interest on the remainder and one fifth the money borrowed. In three years the interest on the remainder and one fifth the money borrowed. In four years the interest on the remainder and one fifth the money borrowed. In five years the balance due on such obligations shall be paid and satisfied in full. We have agreed and do agree that the trustees of said Rush Centre Creamery Co. shall make an assessment upon each of us and the same shall be deducted from the amount due us for milk each year, during the said term of five years sufficient in amount to pay such obligations as above mentioned in the term of five years with interest as aforesaid. The assessment shall be made and the money

deducted from the amount due us for milk upon the following basis, viz : In exact proportion to the amount of milk furnished by each of us to the said company, and when the said Creamery building and machinery shall be paid for, that we shall become the owners of the same in proportion each shall have contributed toward the payment of the same in the manner aforesaid. The trustees appointed as aforesaid and the one to be elected annually are to be taken from our number.

" In witness whereof, we have hereunto set our hands and seals, the 1st day of December, 1892."] [1]

To that paper are signed the names of some twenty-odd men, among them the name of R. H. Hillis, the defendant. It is claimed by the plaintiff that in pursuance of this agreement between the parties, at the time mentioned for the election of trustees, a majority of the subscribers met and elected three trustees. [That those trustees in accordance with the terms of this agreement proceeded to borrow the money necessary to erect the building and put in it the machinery for the purpose designated in this agreement. That in doing this they borrowed the sum of $2,400, and that they expended the whole of it for the purposes indicated in this agreement, and that as soon as completed the business contemplated by this agreement was carried on.] [7] I would further state that in the signatures to this agreement, opposite the name of each man is placed the number of cows that he agreed to furnish the milk from to this creamery by the terms that I have read to you, and that the defendant here placed opposite his name ten cows. It is further claimed on the part of the plaintiff that the defendant, R. H. Hillis, never furnished any milk from any cows under this agreement as he had undertaken to do, or any money or anything else, and that the time having elapsed within which by the terms of this agreement the first payment was to be made upon the money borrowed, that the creamery company paid the money, and they have brought this suit to recover from the defendant his proportionate share of the amount due and paid by the company. There has been no evidence submitted on the part of the defendant, and I understand that there is no controversy as to the facts as I have stated to you from the evidence. But you will not take my statement. You will take the evidence as it has been submitted to you in this case, and determine

whether these facts have been established and whether the patrons of this creamery company, or rather the parties who signed this agreement, have complied with the terms of the agreement, elected trustees, borrowed the money, expended it as designated by this agreement and, the time having elapsed for the payment of a portion of the money, whether they have paid it, and whether according to the terms of this agreement each of the signers to this has become responsible for the amount of his proportionate share.

On the part of the defense it is claimed that under this agreement the defendant is not liable because there is no consideration for it and that is not such an agreement as binds him, and that he was not notified of the meeting of the trustees, and has received no notice and performed no act or deed making him a party to this agreement and also that the agreement itself, by reason of inherent defects, is not enforceable.

[Now, as a matter of law, it becomes necessary for us to construe this agreement and under it we construe it that when this agreement was signed it was an agreement of these parties with each other, and their mutual agreements constituted a sufficient consideration to support the promises of the defendant, and by it he obligated himself to bear his proportionate share of the expense attending the erection of a creamery, and when the trustees elected as agreed, or trustees agreed upon by the parties, or elected at a time specified, went on in good faith and borrowed the money and erected the creamery, he was responsible for his proportionate share of it, according to the terms of that agreement. He could not in conjunction with his fellow-citizens agree that they together should expend a certain sum of money, and after they had done it throw upon them the burden of paying his proportionate share of the expense attending the same.] [8]

But it is contended on the part of the defense that the method of obtaining his share of this expense is set forth in the instrument which he signed, and that that is to be measured by an exact proportion of the amount of the milk that he actually furnishes in proportion to what the other subscribers furnish. That is the agreement between the parties, and if he had furnished the milk to the creamery as he had agreed to do, in the absence of any testimony showing that amount, they could not recover.

[But when he declined to furnish his milk, by his own act he places it beyond the power of the company to make the assessment of the division in conformity with the agreement of the parties, and by his own refusal to perform his agreement he cannot avoid the responsibility of the agreement itself. And he is responsible to this company, under the title of the association which he had agreed to be the title of it in the articles that he signed—Rush Centre Creamery Company—in a suit by them for his proportionate share under that agreement of the amount expended by them in building that creamery and putting in their machinery.] [9]

When this suit was brought, under the terms of this agreement, there was only due and payable one assessment, and that would be one fifth of the total amount borrowed, with the interest upon the whole amount. The question for you to ascertain in rendering a verdict in this case is, what is that share? You are to take the evidence in this case and ascertain it from all the evidence. If he has destroyed by his own act, or by his refusal to act, the method of ascertainment prescribed by the agreement, then the jury must ascertain it by the next best method of ascertainment. [That the method under the terms of the agreement is the only exact method, as claimed by the defendant, is true, but by not furnishing the milk, he himself has destroyed the exact method. Therefore you are at liberty to take the next best means of ascertaining, or the company are at liberty in making the assessment to take the next best means of ascertaining, his proportionate share of that sum, and it is for that purpose that this clause is placed in the agreement. You have, by the agreement offered in evidence, the number of cows which each man was to furnish, and you may ascertain, if you are able to, from the number of cows they were to furnish under the agreement his proportionate share of the amount of money borrowed and, his proportionate share of the money due or paid by the company at the time of commencement of this suit, with interest from the time of the commencement of the action.] [10]

Defendant's counsel objects to the plaintiff sending out any statement with the jury. Objection overruled, and the plaintiff's counsel permitted to send out with the jury a statement as appears by the files in this case. Defendant excepts. Bill sealed for defendant.

By the Court: This statement which is sent out by the plaintiff is a statement of his claim, but it does not control you in making up your verdict. It is only what the plaintiff claims, but you must find the amount due irrespective of the statement of the plaintiff.

Verdict for plaintiff for $30.36. Defendant appealed.

*Errors assigned* were, (1) in admitting the agreement in evidence, reciting same as set out in the charge of the court; (2) in admitting evidence of the loan of $2,400; (3) in admitting minutes of the Rush Centre Creamery Co. in evidence; (4) in admitting evidence as to who was the acting trustee for the year; (5) in admitting evidence as to the proportion of the subscribers in the contract present at the meeting at which the organization was perfected; (6) in permitting the following question to be asked and answered: " Was there an assessment made against the members furnishing milk for first year?" (7–10) portions of the judge's charge, reciting same; (11) the charge as a whole is erroneous, as the case should have been taken from the consideration of the jury; (12) in sending out with the jury a statement of plaintiff's claim, under objection; (13) in refusing to enter a nonsuit; (14) in entering judgment in favor of the plaintiff and against the defendant.

*T. J. Davies* for appellant.—The form of action in assumpsit is not the proper remedy; it must be bill in equity or an action in account render: Price v. Spencer, 7 Phila. 179; Riley v. Eigo, 1 Pa. Superior Ct. 139; Murray v. Herrick, 171 Pa. 21.

In all the cases where recovery has been permitted to be made in assumpsit the subscribers have promised to pay a certain and positive sum of money at a certain given time, and the amount to be raised has been definitely expressed. Those material elements are lacking in the case at bar.

*A. B. Smith* of *McCollum & Smith* for appellee.

OPINION BY SMITH, J., February 16, 1897:

The principal matters for determination in this case were questions of fact. These have been found in favor of the plaintiff, and in view of the evidence a different conclusion could not well have been reached. It was shown, without con-

tradiction, that the plaintiff and twenty-eight of his neighbors made a written agreement to establish and conduct a creamery, and to borrow the money necessary to put it in operation; each party to contribute the milk of a specified number of cows, and to incur a liability for the loan, and acquire an interest in the property, proportioned to the quantity of milk furnished. Pursuant to this agreement a loan was made, and the creamery built. This action is brought to recover the proportion of this loan due at the time of its commencement for which, it is contended, the defendant became responsible under the agreement. The defense set up is purely technical. There is no denial that the indebtedness was incurred in good faith by the company and the money honestly and economically expended for the purposes set out in the agreement. The defendant neither alleges nor intimates that any of his cosubscribers had acted fraudulently or unfairly toward him. He never sought to withdraw from the association or notified the trustees or any of his associates in the enterprise that he would not live up to his agreement. He remained silent on this vital point, and allowed contracts to be made and liabilities incurred, in good faith, upon the credit of his written promise. He now seeks to avoid liability, on the ground that he was not notified of the meetings of the company or the appointment of the trustees. Curiously enough, he adds as a further reason the fact that he also violated his agreement by failing to furnish milk as he had agreed to do; thus pleading one default as justification for another. It does not appear that any person was authorized to call or give notice of the meetings or that anything was done to his prejudice. It is not alleged in his behalf that he would have opposed what was done, either in selecting trustees, in effecting the loan, or in constructing the plant; nor is it alleged that he was not permitted to attend the meetings or had not opportunity to do so equally with his associates. No written notice was sent to any one; the secretary "just sent word around;" and whether the defendant received word was not shown. He does not deny that he received word or had knowledge of the time of meeting. But whether he did or not is not material. The agreement fixed the time for the first meeting, and it was his duty to take notice of this. Had he done so he would probably have learned of the time and place fixed for subse-

quent meetings. Under these circumstances his defense on legal technicalities has little to commend it.

The principal contention on behalf of the appellant here is that the written agreement created a partnership between the parties, and that, as transactions between copartners are not the subject of suit in assumpsit until after settlement of the partnership accounts, this action cannot be maintained. If the subject-matter in suit grew out of obligations incurred in a prosecution of the partnership business, the objection would be well taken; for it is familiar law that before one partner can sue another in assumpsit for matters growing out of the partnership business, the partnership accounts must be settled. But this rule is confined to transactions in the business of the partnership or growing out of its accounts, and has no application to matters distinct from its business and accounts, though connected with the partnership. Thus, contracts for the creation of a partnership are enforceable at law, and agreements for contributions may be sued for directly on the contract. So an action will lie for the breach of an agreement to form a partnership, or for the exclusion of a partner from participation in the copartnership business : 17 Am. & Eng. Ency., 1262. The distinction would seem to be this, that an action will lie upon the partnership agreement, for the violation of all its stipulations for which damages can be assessed, without requiring an accounting of the partnership business proper or involving its transactions. In our own state we have cases where actions were brought directly upon the articles, to recover damages for the wrongful dissolution of the partnership: Hunter v. Land, 81* Pa. 296, as well as for acts wrongfully embarrassing its operations, in violation of a covenant in the articles: Addams v. Tutton, 39 Pa. 447. In the case of Canfield v. Johnson, 144 Pa. 61, a contract was entered into whereby it was agreed that the parties should accept a contract for the erection of a soldiers' monument, the work to be done on shares, and the profits to be divided equally between them. The defendants secured the contract, and, with the exception of furnishing the designs and photographs, the plaintiffs did nothing toward the construction of the monument, the defendants in disregard of the agreement having sublet to others the part of the work which was to have been done by the plain-

tiffs. In an action of assumpsit brought by the plaintiffs for the recovery of one half of the profits realized on the contract, the court below directed a verdict for the defendants on the ground that there could be no recovery in that form of action. In reversing the case the Supreme Court, speaking through Mr. Justice GREEN, said: " We do not agree with the learned court below in holding that there could be no recovery in the action of assump-. sit. The allegations and proofs of the plaintiffs were that the defendants had not carried out the contract with them. They had not engaged in the execution of a contract of partnership, or any contract for their mutual advantage or profit. On the contrary, they had proceeded to have the monument and pedestal built and placed exclusively .on their own account, and for their own benefit and advantage, and had thus violated the contract which the plaintiffs claimed and gave evidence to prove. In other words, they had broken the contract of part-·nership or joint interest, and therefore no such contract was performed or executed. In such circumstances, the injury or breach which gives a legal remedy is a violation of the contract of partnership, and not its execution and a consequent partnership liability. Hence a partnership bill which lies between persons who actually are partners, and for the settlement of the partnership accounts, is not the proper remedy, simply because, although the defendants agreed to become partners with the plaintiffs in this transaction, in point of fact they did not, and hence the relation did not exist. The action, therefore, must be regarded as an action to recover damages for the breach of a contract to become partners, and for that purpose the proper remedy would be an action of assumpsit on the undertaking. But, of course, while all this is true, the measure of damages would be in accordance with the terms of the contract, to wit, one half of the profits which the defendants did make, or ought to have made, in doing the work in question. Hence it was quite legitimate for the plaintiffs to claim in the narr and to prove on the trial, that they were entitled to have the one half of those profits from the defendants, and to give evidence as to what those profits were or should have been. Moreover, as this was a single transaction, without any· complicated accounts to adjust, we would incline to hold, were it necessary to do so, that the case came properly within the.

somewhat numerous decisions of this court, in which it is held that, where the transaction is single, without complicated accounts, and there are no debts to be adjusted, a bill in equity is not necessary for the settlement of the accounts, but an action of assumpsit will lie. Instances of this are to be found in Wright v. Cumpsty, 41 Pa. 103; Cleveland v. Farrar, 4 Brewst. 27; Galbreath v. Moore, 2 W. 86; Meason v. Kaine, 63 Pa. 336. It is not necessary to rest the decision of the present case upon this principle, however, as we regard the proceedings as an action to recover damages for the breach of a contract to enter into a partnership or joint relation, and not as a proceeding to settle partnership accounts." Under the authority of this case and the principles of law stated, the right to maintain the present action cannot be doubted.

The remaining question to be noticed is whether the agreement can be enforced. It is contended that because no specific sum is subscribed or promised by the parties, it is not binding; that there being no obligation for a specific contribution, the contract is too indefinite to create any liability. We are referred to no authorities in support of this view. In all the cases cited, it is true, a definite sum was subscribed, yet it does not follow that an agreement to ascertain the amount of the subscriptions upon a certain basis would not be equally binding. When the cost of a new enterprise is not definitely known by its promoters, there can be no objection to an agreement to bear it ratably, according to their respective interests in the project; and that was what was done in the present case. The case of Troy Iron & Nail Co. v. Corning, 45 Barb. 231, resembles the one before us in its leading features. There, by articles of association, the associates severally bound themselves to pay a ratable proportion, (based upon interest and benefit) of all expenditures made or to be made in the promotion of the work undertaken, when assessed and apportioned among them. This was held to be a sufficiently definite specification of their respective liabilities; and the liability to pay the assessments was held to arise on the promise by each to the other, which could be enforced in an action in the names of those injured by the default. In that case it was also held that those who derived little or no benefit from the project could not relieve themselves from liability by refusing to participate in the business of the association. It

has also been held that where partners agree to contribute capital, from time to time, to meet expenses as occasion might require, one who contributed the whole might recover from his copartners what they should have paid: Brown v. Tapscott, 6 M. & W. 119; Lindley on Partnership, 564. It is clear, on principle and authority, that the agreement in the present case was sufficient to bind the parties after its purposes were accomplished according to its provisions.

There is no just cause for complaint against the rulings or charge of the court. The learned judge tried the case fairly and correctly.

The specifications of error are all overruled and the judgment is affirmed.