345 F.2d 654
 S. RIGGI & SON CONSTRUCTION CORP., a Corporation of the
State of New Jersey, Appellant,
v.
FROUGE CONSTRUCTION COMPANY, Inc., a Corporation of the
State of Connecticut, Trading as Cape
Constructors, a Partnership Organized
and Existing Under the Laws of
the State of New Jersey.
 No. 14910.
 United States Court of Appeals Third Circuit.
 Argued Dec. 15, 1964.
Decided May 11, 1965.
 
 C. W. Berl, Jr., Berl, Potter & Anderson, Wilmington, Del., for appellant.
 Howard M. Handelman, Wilmington, Del., for appellee.
 Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 In this diversity case appellant subcontractor sued appellee general contractor for breach of contract. Defendant pleaded 'that prior to the commencement of this action plaintiffs executed and delivered complete releases discharging and releasing defendants from any and all claims.' It was agreed between the parties that the release issue be tried to the court. The release was marked DX1 in evidence. Its first paragraph reads:
 
 
 2
 'KNOW ALL MEN BY THESE PRESENTS that (Name of firm) S. RIGGI & SON CONSTRUCTION CORP. Subcontractor furnishing material and performing work for the (Type of work) Masonry on the (Name of job) Capehart Housing Project being constructed by CAPE CONSTRUCTORS as General Contractor, for (Name of owner) Dover Air Force Base at (Location) Dover, Delaware hereby acknowledges receipts of the sum of $7,549.73, being the FINAL payment due on its subcontract dated (Date of contract) May 27, 1957 including all extras, and does hereby release the said CAPE CONSTRUCTORS from all manner of debts, sums of money, liens, claims, and demands of whatsoever kind, which it now has or might have against it or against the said building and land by reason of the premises so that the owner of said premises and its successors and assigns shall be freed and discharged of said claims, and so that it shall and may hold and enjoy the said buildings and land freed and discharged from all liens, claims and demands whatsoever which the Releasor now has or might or could have on or against the same, if these presents had not been made.'
 
 
 3
 Plaintiff claimed that DX1 was a release of mechanics liens only and presented evidence in an effort to show that the form used for DX1 was substantially similar to that used in Delaware for release of mechanics liens and that it had not been the intention of the parties to have DX1 operate as a general release. It is also urged that if the document is not clearly a lien release its language is at the least so ambiguous as to defeat the contention that it is a general release. Finally, after the trial court had held the release a bar to the prosecution of the action and dismissed the amended complaint, there was a motion to further amend the amended complaint by alleging that:
 
 
 4
 '9. During the latter stages of the construction of the said Housing Project it was known to defendant that losses had been suffered by plaintiff through defendant's fault and that plaintiff had a claim or claims against defendant by reason thereof.
 
 
 5
 '10. At about that time defendant was the successful bidder on a continuation of the Dover Air Force Base job. Plaintiff submitted a bid for the masonry work.
 
 
 6
 '11. Thereafter it was agreed between the parties that plaintiff was to have the masonry contract on the continuation of the Dover Air Force in return for which plaintiff would not press its claim for damages for its losses on the original job.
 
 
 7
 '12. Thereafter at defendant's request plaintiff executed a release generally releasing any claims it might have against Cape by reason of losses sustained by plaintiff on the first contract. The sole consideration for the execution of the release was the promise by defendant that plaintiff would be awarded the masonry contract on the continuation of the Dover Air Force Base Project.
 
 
 8
 '13. For mony months following the execution of the release plaintiff attempted to persuade defendant to abide by its agreement but defendant arbitrarily and in bad faith failed to award the contract to plaintiff. And in fact appropriated the contract, and the profits therefrom, to itself.'
 
 
 9
 On the argument for the motion to amend, counsel for the plaintiff told the court that 'It was not the intention of the amended complaint to set forth two causes of action. The intention of the complaint was to set forth the circumstances-- the basic cause of action and to state alternative demands for damages, * * *.' The gist of the new material was that through defendant's fault, plaintiff had been seriously delayed in finishing its subcontract and suffered large damage thereby and that the defendant had agreed to compensate plaintiff for those losses by giving it a new subcontract in connection with the continuation of the Dover Air Base job, which was located across the street from the project before us. Riggi's testimony was that Cape Constructors, with respect to both the general Capehart Housing contract and the new continuation Dover Air Base contract, was a joint adventure between the Frouge Company and Terminal Construction Co. Richard Dinallo was president of the latter. Mr. Riggi said that prior to January 10, 1959, the date he signed the release, Dinallo offered him the 'job across the street' on behalf of Cape Constructors and that he at that time accepted the offer. In the course of the argument it was again specifically stressed by counsel for plaintiff that the above noted claim was not founded on a new contract.
 
 
 10
 The court in its opinion of April 2, 1964, denied plaintiff's motion for 'reargument' (actually this motion was for rehearing) as to its judgment of March 14, 1964, dismissing the action. It also denied leave to file a second amended complaint. The court stated that the damage claim there asserted for defendant's failure to give plaintiff the new subcontract to compensate for its losses on the first job was eliminated by the March 16th decision that '* * * the release is a bar to the prosecution for the breach of the contract of May 27, 1957.' The court also rejected the suggestion that the dereliction of the defendant in not having the new subcontract turned over to plaintiff indicated failure or lack of consideration for the release. That conclusion was based upon the pretrial order of November 27, 1963 which limited the defense attack on the release to the grounds (1) that it merely released the land and buildings and (2) in the alternative that oral testimony would be offered to support the proposition that only a mechanics lien release was intended by the parties.
 
 
 11
 The release, as appears from the plain language of its vital paragraph above quoted, is not a general release but by its terms plaintiff does release defendant from all its claims arising out of its subcontract, dated May 27, 1957, with defendant for the masonry on the Capehart Housing Project. There is collateral language in the form used which, together with testimony regarding the Delaware trade custom as to the release of mechanics liens, lends some support to the plaintiff's view that a mechanics lien release was intended. However, in view of the unmistakable wording of the release we must affirm the district judge in his view that it embraced all of plaintiff's rights under the 1957 contract.
 
 
 12
 This brings us to plaintiff's motion for rehearing coupled with its motion to further amend its complaint. As above mentioned, a sincere, tenacious attempt was made to introduce into this cause, the issue arising out of Mr. Riggi's testimony that the defendant had agreed to reimburse his company for the delays it had occasioned, by giving the Riggi concern the new masonry subcontract for the Dover Air Base Continuation.
 
 
 13
 If that alleged arrangement were to be presented as a separate, independent contract between plaintiff and defendant, it would admittedly be barred by the applicable three year Delaware statute of limitations (10 Del.C. 8106). This is not the position of the plaintiff so that problem need not be examined further.
 
 
 14
 What plaintiff does maintain is that the 1957 contract includes the now contended for agreement i.e. the reimbursement to plaintiff of its losses incurred during the course of the contract through defendant's fault. The reimbursement, according to plaintiff, was to be in the form of a new subcontract to plaintiff. If we were to assume all that to be the fact, still whatever rights, if any, plaintiff had obtained from that agreement were wiped out by the release it executed on January 10, 1959. In the light of that situation, the trial court's order denying the amendment makes no practical difference in plaintiff's status with respect to this question. Even so, it is necessary that the court's denial of the proposed amendment be sustained. The pretrial order, entered after meticulous preliminary conferences between the attorneys and the district court, stated precisely the trial issues. Most emphatically, it did not include the above allegation which was not made until after judgment. The ruling was a matter of the court's wise discretion. That discretion was not abused. Payne v. S.S. Nabob, 302 F.2d 803 (3 Cir. 1962).
 
 
 15
 The judgment of the district court will be affirmed.