**A. B. FISHER, as Executrix of the Estate of F. T. Fisher, Deceased**

v.

**B. FISHER and W. L. Fisher.**

Civ. A. No. 26342.

United States District Court
E. D. Pennsylvania.

Dec. 14, 1965.

**678**

Paul A. Levy, Philadelphia, Pa., for plaintiff.

Donald D. Kennedy, Jr., Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

As stated by former Chief Judge (now Circuit Judge) Ganey in his opinion of June 21, 1961:

"Plaintiff is a Connecticut Executrix suing two individual defendants, one from Pennsylvania and one from Florida, for $11,078.30, which sum represents decedent's book value share of the net assets of a partnership, taken at the date of his death. Defendants claim they liquidated the partnership within six months of the death of plaintiff's decedent and claim to have received only $8,558. in cash, which sum they say had to be applied against the unsecured liabilities of the partnership, totaling $29,150.11. Defendants paid the deficit out of their pockets. In light of there being no assets available for distribution and, in fact, an alleged deficit of $20,592.11, the defendants counterclaim for the pro rata share of the alleged deficit that they say plaintiff's decedent owes."

This case has been tried to the court on a Stipulation of Facts.

On or about March 31, 1948, F. T. Fisher (now deceased), B. Fisher, and W. L. Fisher entered into a written partnership agreement[1] for the purpose of conducting a business of buying, selling, breeding and maintaining cattle. The partnership was to continue from its inception until March 31, 1953, and from year to year thereafter. The partnership was not to be terminated by the mere fact of death of any of the partners.[2]

F. T. Fisher died on July 1, 1954. The surviving partners liquidated the business, but the money received was insufficient to pay the outstanding partnership debts. The sum of $20,592. was advanced by the surviving partners individually to satisfy these debts.

---

1. Hereafter called agreement. The three partners agreed to share the net profits and the net losses of the operation, and, hence, of the liquidation, of the partnership in the following proportions: F. T. Fisher, 76%; B. Fisher, 14%; and W. L. Fisher, 10%.

2. Paragraph 3 of Exhibit A to Document 1.

In this diversity action, the plaintiff is the executrix of the estate of F. T. Fisher. The defendants are the surviving partners. The interest of F. T. Fisher in the assets of the partnership was inventoried by the plaintiff at $11,078.30,[3] and this is the amount she claims in this action. She claims that the surviving partners were under no duty to liquidate and also that they should not have made the advances they did to pay the liability. Her reasoning is based on her interpretation of the agreement. Her primary contention is that the interest of the deceased partner was established as of the date of death; that the estate is entitled to this share whether or not there were sufficient funds after liquidation of the partnership assets to pay it; that if there were not, then the surviving partners individually were required to pay this sum; and that the valuation of this interest was his proportionate share of the book value of the partnership at the date of death.

■ Plaintiff's position must be rejected since it is not based on a reading of the partnership agreement as a whole, especially the following provisions:

"3. *Duration.* * * *

"The partnership shall not be terminated by the mere fact of the * * * death * * * of any of the partners.

* * * * * *

"9. *Liability for losses.* 'Net loss' shall be the amount by which the income of the business is exceeded by the aggregate of all operating and other expenses, including salaries, if any, payable to partners. In case the business of the partnership shall result in a net loss, such loss shall be borne by the part-

ners in such proportion as their respective percentages in the net profits bear to such losses.

"10. *Withdrawal of Partners.* * * * If any partner shall die * * *, he shall be deemed to have withdrawn from the partnership as of the date of his death, * * *. In the event of any such withdrawal by a partner his interest in the partnership shall cease as of the date of such withdrawal, shall be determined as in the case of the dissolution of the partnership and shall be paid to him or to his legal representatives within one year after the date of such withdrawal.

"11. *Termination, Dissolution and Liquidation.* Upon the termination or dissolution of the partnership for any cause whatsoever the interest in the partnership of each partner shall be determined as follows:

The value of all assets entered upon the books of the partnership shall be determined solely on the basis of the books of the partnership and such books shall be conclusive for all purposes in connection with the determination of the value of such assets, * * *.

* * * * * *

The net amount distributable to any partner shall be determined by a majority in interest of the partners, who may fix the amount, if any, to be withheld as a reserve on account of liabilities, actual or contingent.[4] Any amount so withheld and not disbursed against liabilities of the partnership shall be distributed among the partners or their respective representatives in

---

3. This figure represents the decedent's share of the excess book value of assets over liabilities as of July 1, 1954.

4. Paragraph 6 of the Stipulation establishes the setting up of reserves to cover liabilities, as provided in this paragraph, using this language:
"6. All of said current assets of the partnership in the total amount of

$35,271.96 at book value were determined by the two surviving partners, B. Fisher and W. L. Fisher, to be a reserve to pay all of said current unsecured liabilities in the total amount of $29,150.11; and all of said fixed assets of the partnership in the total amount of $144,949.50 at book value were determined by the two surviving

accordance with their interests at such time or from time to time as a majority in interest of the partners shall determine that the further withholding of such amount is not reasonably necessary.

"Upon any such distribution there shall be paid out of the net assets distributable to the partners, first, the amount of the capital contribution of each partner (which shall be the amount of capital contributed by such partner less any charges on account of net losses chargeable against the same hereunder) and in the event that the net assets of the partnerships shall not be sufficient to make such payment in full then pro rata to the capital contributed by each, and any balance of such net assets shall be distributed to the partners in accordance with their interest in the net profits of the partnership.[5]

\* \* \* \* \* \*

"Subject to the foregoing, distribution in kind, as nearly as practicable, shall be made to the partners entitled thereto, \* \* \*.

\* \* \* \* \* \*

"15. *Management.* \* \* \* no financial obligation of a duration in excess of thirty days shall be incurred without the prior consent of all the partners."

The above provisions make clear that only the net assets were to be distributed to the estate of a deceased partner after payment of, or provision for, liabilities. All debts were to be paid within thirty days, but a deceased partner's estate was not entitled to payment until a year after his death. Unless liabilities were to be paid after liquidation of assets, there would be little need for a provision delaying payment (normally to be "in kind") of a deceased partner's interest. The valuation of assets based on book prices was needed, since the last sentence of the quotation from paragraph 11 above shows that distribution in kind of any net assets was contemplated on dissolution.[6]

The stipulated facts do not indicate that the partners contemplated in 1948, when the partnership agreement was made, that the partnership business would be carried on in Florida, since paragraph 4 provides that "the principal place of business of the partnership shall be New Canaan, Connecticut." An examination of the partnership agreement makes clear that the last signature was placed on this agreement in Connecticut on July 8, 1948 (see affidavit of Frederick T. Fisher on the page following page 12 of such Exhibit A). Under such circumstances, the law of Connecticut would apply to the construction and interpretation of this contract. See Restatement, Conflict of Laws, § 342. In Connecticut, the surviving partners hold the partnership property as quasi-trustees for the estate of the deceased partner, with the duty to liquidate the affairs of the partnership and pay over any net assets, after discharge of the debts, to such estate. See Van Derlip v. Van Derlip, 149 Conn. 285, 179 A.2d 619 (1962), where the following language was used:

"At common law, in the absence of a contrary agreement, 'the death of a partner dissolves the partnership, and the legal ownership and right

---

partners, B. Fisher and W. L. Fisher, to be a reserve to pay not only all of said current secured liabilities of the partnership in the total amount of $24,-315.24, but also all of said mortgage and other long term secured liabilities of the partnership in the total amount of $116,733.33. No partnership assets were available for distribution to any of the partners at or after the death of

F. T. Fisher, Deceased, on July 1, 1954."

5. Paragraph 8 provides that "net profts" shall be distributed among the partners as described in footnote 1.

6. The analysis of the terms of the partnership agreement set forth at pp. 11–15 of defendants' brief and pp. 1–6 of their Reply Brief further supplements this paragraph.

of control of the partnership assets vests in the surviving partner, which he holds however as a quasi-trustee for the estate of the deceased partner. It is his duty to liquidate the affairs of the partnership and account to the representative of the deceased partner, and pay over to him the estate's share of the net partnership assets.' Casey v. Hurley, 112 Conn. 536, 538, 152 A. 892 (1931)."

■ The above-quoted language from the partnership agreement is not inconsistent with the normal Connecticut rule, as stated above. To sustain the interpretation placed on the language of the partnership agreement by plaintiff in this case would give the language an "extraordinary meaning" and this is contrary to the applicable rule for construction of the wording of contracts. As pointed out in § 235, par. b. (Comment on clause (a)),[7] of the Restatement of Contracts, " * * * the ordinary sense of words both singly and in collocation is adhered to unless doing so would lead to some absurdity, or repugnance or inconsistency with the rest of the instrument." The interpretation sought by plaintiff would lead to an extraordinary or absurd result, since it would require the surviving partners to pay more than their share of the losses of the partnership enterprise, which is inconsistent with paragraph 8 of the partnership agreement as well as with the terms of the partnership agreement construed as a whole. This interpretation is a particularly extraordinary one to put on a partnership between a father with a 76% interest and two sons with 10% and 14% interests. See letter attached to Stipulation of Facts.

In the event that an appellate court should decide that the law of the forum controls the interpretation of the part-

nership agreement, a brief discussion of this law has been placed in Appendix A.

In Moore v. Huntington, 17 Wall. 417, 84 U.S. 417, 423–424, 21 L.Ed. 642 (1873), the court used this language in rejecting the argument made by plaintiff in support of her complaint:

" * * * it goes upon the ground of charging the defendants with everything at the date of the decedent's death at its value at that time. Such is not the true rule. It was a legal right of the defendants, as surviving partners, to close out the concern, collect and dispose of its choses in action, and its property, pay what it owed, and then pay over to the plaintiff her just share of what was left. They were not bound to become purchasers of the decedent's interest at a valuation. But they were bound to use reasonable diligence and care in closing out the business, and in taking care of the decedent's interest. If they used such care and diligence they are only liable for what was realized in their hands when it was done."

Defendants, as surviving partners, are entitled to a judgment for contribution from the estate of the deceased partner for his appropriate percentage of the excess of liabilities contracted by the partnership prior to the death of F. T. Fisher[8] over the amount realized in liquidation of the partnership assets.

■■ After the death of a partner, the surviving partners are entitled to possession of the partnership assets, Ickes v. Gazzam, 65 App.D.C. 346, 83 F.2d 603 (1936), which they hold as trustees, Heiden v. Reuttler, 11 F.Supp. 290 (N.D.Iowa, W.D., 1935), for the purpose of liquidation, 68 C.J.S. Partnership § 271(b), and the creditors of the partnership are entitled to payment out

---

7. Section 235(a) provides:
   "(a) The ordinary meaning of language throughout the country is given to words unless circumstances show that a different meaning is applicable."

8. The surviving partners do not claim any debts contracted after July 1, 1954.

of these assets, Hafey v. W. C. Mitchell Co., 293 F. 27 (8th Cir. 1923), which, in general, are regarded as the primary fund for the payment of partnership debts. If there is not sufficient partnership property to satisfy the partnership's liabilities, each partner must contribute his share toward such satisfaction, and the surviving partners compelled to pay the partnership debts are entitled to reimbursement from the estate of the deceased partner to the extent of the deceased partner's share[9] and are entitled to contribution from the estate if the partnership assets are insufficient to meet its obligations.[10]

■ Partners may agree among themselves as to the basis on which losses shall be borne, and such agreement on this point will be controlling between the partners. First Mechanics Bank v. Commissioner of Internal Rev., 91 F.2d 275 (3rd Cir. 1937). As quoted above at page 679, paragraph 9 of the partnership agreement provides the method for determining such losses.

■ Defendants are entitled to contribution from the estate of the deceased partner, F. T. Fisher, in the amount of $15,650.00[11] (see paragraphs 10–24 of Stipulation, being Document 14). Since both parties have been delinquent in bringing this case to a prompt trial (see, for example, Document 8), no past interest will be allowed.

### ORDER

And now, December 14, 1965, it is ordered that judgment be entered for the defendants and against the plaintiff on the Complaint and in favor of B. Fisher and W. L. Fisher, plaintiffs, on the counterclaim, and against A. B. Fisher as Executrix of the Estate of F. T. Fisher, deceased, defendant on the counterclaim, in the amount of $15,650.00.

### APPENDIX A

■ Since the Uniform Partnership Act has been in effect in Pennsylvania[a] (being the location of the forum) prior to March 1948, its provisions may be applicable. Under §§ 29–31 and 35 of this Act (59 P.S. §§ 91–93 and 97), dissolution of the partnership is caused by death, but the surviving partners have the duty to wind up the business. Section 37 of the Uniform Partnership Act (59 P.S. § 99) provides: "Unless otherwise agreed, the partners * * * [have] the right to wind up the partnership affairs."[b] The language of the partnership agreement quoted above does not

9. See footnote 1.

10. See Parry v. Lackawanna Grange Produce Ass'n, Appel., 72 Pa.Super. 603 (1919); Rush, etc., Co. v. Hillis, 3 Pa. Super. 527 (1897). Plaintiff does not attack the method of liquidation, the manner in which it was conducted, or the value received for partnership assets upon sale. She does not say it was not timely, and she does not claim that the money to pay the partnership debts was not advanced by the defendants individually for the unsatisfied debts.

11. Although plaintiff has raised the doctrine of laches [cf. Gardner v. Barron et al., D.C., 240 F.Supp. 87, Opinion of 3/11/65 at page 89 (Civil Action 35013)] at pages 7 and 8 of her brief filed November 10, 1965, this defense to the counterclaim was not raised either in the pre-trial memoranda or at the pre-trial conference or at the time of trial in October 1965. Under these circumstances, such issue cannot be injected into the case at this late date. See Payne v. S. S. Nabob, 302 F.2d 803 (3rd Cir. 1962). See, also, S. Riggi & Son Construction Corp. v. Frouge Construction Co., 345 F.2d 654, 656 (3rd Cir. 1965).

a. 59 P.S. 1 ff. This Act was adopted in Connecticut on 5/15/61 (Act No. 158 of 1961, C.G.S.A. §§ 34–39 to 34–82).

b. Even if Florida law should apply since the business was apparently conducted in Florida at the time of the dissolution of the partnership in 1954, when a person dies owning an interest in a Florida partnership, if there is no agreement to the contrary, it is the duty of the surviving partners to liquidate the business. See Florida Statutes Annotated, Vol. 21, § 733.37.

contain an agreement contrary to this provision.

The Uniform Partnership Act also provides in § 38 (59 P.S. § 100) that on dissolution "each partner, as against his co-partners and all persons claiming through them in respect of their interests in the partnership * * * may have the partnership property applied to discharge its liabilities * * *." c

---

c. See, also, § 40(b) (59 P.S. § 102(b)), providing for payment of partnership liabilities before any distributions of capital are made.