**Ellen HINES, Administratrix of the Estate of Albert Joseph Hines, Deceased,**

v.

**BRISTOL CITY LINE (CANADA) LTD.,**

v.

**NORTHERN METAL COMPANY.**

**Civ. A. No. 38485.**

United States District Court
E. D. Pennsylvania.

July 1, 1969.

Louis S. Fine, Fine, Staud, Silverman & Grossman, Philadelphia, Pa., for plaintiff.

John T. Biezup, Rawle & Henderson, Philadelphia, Pa., for Bristol City Line (Canada) Ltd.

James B. Doak, LaBrum & Doak, Philadelphia, Pa., for Northern Metal Co.

## OPINION AND ORDER

WOOD, District Judge.

Plaintiff seeks to set aside a directed verdict in favor of the defendant and for a new trial. After argument and a complete review of the record we reach the same conclusion as we did in the first instance and therefore the motion must be denied.

Albert Hines, a longshoreman, was found dead at the bottom of No. 5 hatch on board the defendant's vessel, the S/S GLOUCESTER CITY, at about 1:15 P. M. on July 9, 1965. There were no witnesses to the occurrence of his death. Investigation by an Examiner from the Philadelphia Medical Examiner's Office revealed that death was caused by multiple injuries to the head and trunk (N.T. 23). At trial, there was no probative evidence introduced to show how or from where the deceased had fallen to the floor of the hatch. There was a ladder leading down into the hatch, but plaintiff's counsel conceded that there was no evidence of any defect in the ladder. Testimony introduced by the plaintiff indicated that the area was illuminated, and there was no evidence that this lighting was insufficient. Nor was there any evidence to suggest what the decedent was doing, or intending to do in No. 5 hatch. The gang of which he was a member had been assigned to work in No. 2 and No. 4 hatches. He was one of three deckmen, and it was his turn to rest between 1:00 and 2:00 P.M. There was testimony by the Examiner that tests he performed revealed the presence of 290 milligrams of ethyl alcohol, or the equivalent of twelve to fifteen ounces of 100 proof whiskey, in the decedent's bloodstream. After the presentation of the plaintiff's case, we directed a verdict for the defendant primarily because we did not think that the plaintiff had shown any negligence or unseaworthiness attributable to the ship which was causally related to Mr. Hines' death. See Schlichter v. Port Arthur Towing Co., 288 F.2d 801 (5th Cir. 1961).

It is well established that a ship is not unseaworthy and a seaman cannot recover against it for injuries sustained if his injuries were caused solely by his own negligence. Donovan v. Esso Shipping Company, 259 F.2d 65 (3rd Cir. 1958), cert. den. 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959); Holmes v. Mississippi Shipping Co., 301 F.2d 474 (5th Cir. 1962); Williams v. The SS Richard De Larrinaga, etc., 287 F.2d 732 (4th Cir.1961). During argument on the motion for directed verdict and

again in this motion, the plaintiff contended that the decedent must have met his death because of his intoxication, and that from the failure of the ship's officers and crew to find and assist him the jury should have been able to infer negligence or unseaworthiness. Specifically, he argued that there was evidence of negligence or unseaworthiness because the ship's officer admitted that there was no gangway watch during the period when Mr. Hines returned to the ship after lunch, and because a fellow longshoreman testified that he saw him in a slightly intoxicated condition when he returned to the ship after lunch.

Unfortunately for the plaintiff, there are a number of difficulties with this contention. The plaintiff did not raise the issue of the ship's failure to have a gangway watch before trial and therefore it was waived. See Valdesa Compania Naviera, S. A. v. Frota Nacional de Petroleiros, 348 F.2d 33 (3rd Cir.1965); S. Riggi & Son Construction Corp. v. Frouge Construction Co., 345 F.2d 654 (3rd Cir.1965); Payne v. S. S. Nabob, 302 F.2d 803 (3rd Cir.1962), cert. den. 371 U.S. 870, 83 S.Ct. 136, 9 L.Ed.2d 107 (1962). Moreover, although Captain Doble admitted that there was no gangway watch, he further stated that the only duties of the watch were to be sure that the gangway was safe for boarding, and to be sure that no unauthorized persons were permitted on the ship. (N.T. 113, 122.) A watchman performing these duties could hardly be expected in addition to determine the extent of insobriety of each longshoreman boarding the ship. The fact that a fellow longshoreman observed Hines after returning from lunch at 1:00 P.M. with his speaking and ambulatory powers slightly impaired does not constitute notice of such deficiencies to the ship; and there is no evidence that any officer or crewman of the GLOUCESTER ever observed the decedent in an intoxicated condition.

In any event, even assuming in *arguendo* that these acts or omissions were in some way negligent or rendered the ship unseaworthy, there was no evidence to show that any causal relation between them and Mr. Hines' death was anything but remote and conjectural. As previously stated, there was simply no evidence presented by the plaintiff to show how or why Hines arrived at his death at the bottom of No. 5 hatch. There were no evidentiary facts upon which a jury could base a conclusion that he fell down the hatch because he was intoxicated, so that even assuming that a gangway watch would have been able to identify Hines' state of sobriety as dangerous, the jury could only have related the gangway watch's absence to Hines' death by speculation and conjecture. See Schlichter v. Port Arthur Towing Co., *supra*; Dessi v. Pennsylvania Railroad Co., 251 F.2d 149 (3rd Cir.1958); Haldeman v. Bell Telephone Co., 387 F.2d 557 (3rd Cir.1968).

### ORDER

AND NOW, this 1st day of July, 1969, IT IS ORDERED that the motion to set aside a verdict directed in favor of the defendant and for a new trial is DENIED.