Ellen HINES, Administratrix of the Estate of Albert Joseph Hines, Deceased, Appellant,

v.

BRISTOL CITY LINE

v.

NORTHERN METAL CO. (Third-Party Defendant).

No. 18144.

United States Court of Appeals, Third Circuit.

Argued Jan. 20, 1970.

Decided March 4, 1970.

Louis Samuel Fine, Fine, Staud, Silverman & Grossman, Philadelphia, Pa., (Joseph E. Kaplan, Philadelphia, Pa., on the brief), for appellant.

John T. Biezup, Rawle & Henderson, Philadelphia, Pa., (Robert B. White, Jr., Philadelphia, Pa., on the brief), for appellee.

Before FORMAN, SEITZ and ADAMS, Circuit Judges.

OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiff, administratrix of the estate of a longshoreman, appeals an order of the district court refusing to set aside a directed verdict for defendant and grant a new trial.

Claiming negligence and unseaworthiness, plaintiff sued the defendant shipowner under the Pennsylvania Wrongful Death and Survival statutes for damages resulting from the death of Albert J. Hines. Decedent was a deckman for the stevedore company that was loading defendant's ship at the time of the accident. He was found dead at the bottom of No. 5 hatch of defendant's vessel at about 1:15 p. m. on July 9, 1965. The

medical testimony established that he died from multiple injuries, thus justifying an inference that he fell through the hatch. The decedent was not authorized to go into the No. 5 hatch, and it was not being used by the longshoremen in loading the ship. A post-mortem examination revealed that the decedent was suffering from acute ethyl-alcohol intoxication, having 290 milligrams of alcohol in his blood and urine.

## NEGLIGENCE

Plaintiff contends that the district court erred in directing a verdict because there were three negligence issues which should have gone to the jury [1]:

1. Whether the ship's captain should have seen the decedent drinking and/or drunk in the morning.

2. Whether the officer on duty should have seen the decedent in his drunken condition in the afternoon.

3. Whether there was an officer on duty at the time of the accident.

We think it fair to infer at the outset that defendant agrees that had its officers actually been aware of decedent's intoxicated condition, they would have been under a duty to safeguard him by notifying his superior in the stevedore company. But plaintiff produced no evidence which would even remotely justify an inference that defendant's officers were actually aware of decedent's condition. Plaintiff's first two negligence claims, thus, must be based on what the ship's deck officers reasonably should have seen. Assuming without deciding that such a duty exists, we turn to a consideration of whether plaintiff offered sufficient evidence of a breach of that duty to create a jury issue.

Although the doctor's diagnosis and testimony warranted the inference that the decedent had been drinking heavily at some time or times before the lunch hour, it would be sheer speculation on this record to infer that the drinking probably so affected him prior to lunch hour that his intoxicated condition should have been noticed by the ship's captain or other officers. Nor is there any basis in the evidence for a jury to conclude that the drinking itself, if it took place on shipboard, should have been observed by the captain or officers. The only eyewitness testimony concerning this period was given by the decedent's gang boss. He said that when decedent came to work he "looked very good to me, sober." He further testified that he saw the decedent off and on until lunchtime and the decedent performed his work satisfactorily; that for an hour that morning the decedent was in charge of signaling the crane operator; and that he did not know that the decedent had been drinking the day of the accident.

The decedent went ashore at noon. One of the members of decedent's gang testified that he saw decedent at a bar during the lunch hour acting as though he were "half-loaded." The decedent returned to the ship after the lunch hour. The record does not show that he recommenced work. His gang boss testified that he saw decedent aboard ship sitting with another member of his gang. But he did not suggest that the decedent appeared intoxicated to him at that time. A fellow gang member testified that decedent spoke to him after lunch and asked him "Where did you get to? I wanted to go out with you." He said the decedent's voice was "kind of slurry" and his walk "kind of staggering." A few minutes thereafter decedent was found dead.

Unless, as plaintiff now contends, the defendant had a duty to have a gangway watch,[2] the ship's deck officer could not be reasonably charged with notice of the decedent's "condition" in the short time that elapsed between his return from

---

1. Because of our disposition of this case, we need not differentiate between the negligence claims under the Pennsylvania Wrongfull Death Act and under the Sur- vival Act. See Curtis v. A. Garcia y Cia, Ltda, 241 F.2d 30 (3d Cir. 1957).

2. This issue was not explicitly posed by the pre-trial statement.

lunch and his fall. The officer was not directing the work of the longshoremen. Moreover, as we have previously noted, there is no evidence that the decedent worked after 1:00 p. m. As to plaintiff's belated gangway-watch contention, we can find nothing in admiralty law, custom or the circumstances of this case which would justify the conclusion that the defendant had a duty to this working stevedore to have such a watch during the lunch hour.

Plaintiff's last contention of negligence is that there was a jury issue as to whether there was a failure to have an officer on deck at the time of the accident. However, all of the evidence shows that there was an officer on deck, and no contrary conclusion would be permissible.

■ For the foregoing reasons, we believe the district court acted properly in removing the question of negligence from the jury.

## UNSEAWORTHINESS

■ Plaintiff's claim of breach of warranty of seaworthiness is not easy to articulate.[3] There is no assertion that the physical facilities of the ship were unseaworthy. The claim appears to be based on the contention that the ship "became an unsafe place to work because the ship's officers failed to perform the duties required of them by the ship's rules and practices." We understand plaintiff to be referring to the same rules and procedures which are relied on to show negligence, although, of course, we recognize that there may be unseaworthiness apart from negligence. We think the answer to plaintiff's contention is that the evidence did not create a jury issue as to a violation of the rule or practice of having an officer on deck, and it did not establish any rule or practice as to a gangway watch in the present circumstances. Plaintiff may be claiming that there is a breach of the warranty of seaworthiness if, although an officer was present on deck, he negligently failed to observe decedent's condition.[4] We need not decide whether such "operational negligence"[5] can form the basis of an unseaworthiness claim since it is clear that plaintiff has simply not advanced sufficient proof of the officers' negligence to create a jury issue on that theory.

The order of the district court will be affirmed.

3. Plaintiff's unseaworthiness claim is apparently asserted under both the Wrongful Death and Survival Acts. Our decision in Mascuilli v. United States, 411 F. 2d 867 (1969), raises some question as to whether the Wrongful Death Act embraces such a claim as plaintiff's. Because of our disposition of this case, however, we need not decide whether such a claim is cognizable.

4. Plaintiff does not assert that the knowledge of decedent's fellow longshoremen is attributable to the ship.

5. *Compare* Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir. 1968) and Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961 (2d Cir. 1967) *with* Grigsby v. Coastal Marine Service, etc., 412 F.2d 1011 (5th Cir. 1969) and Tim v. American President Lines, Ltd., 409 F.2d 385 (9th Cir. 1969).