**Booker T. MOORE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 70–202 GBH.**

United States District Court, N. D. California.

July 7, 1972.

Boccardo, Blum, Lull, Niland, Teerlink & Bell, San Francisco, Cal., by Robert Holstein, San Francisco, Cal., for plaintiff.

James L. Browning, U. S. Atty., by Samuel A. Keesal, Jr., Long Beach, Cal., for defendant.

## MEMORANDUM OF DECISION

GEORGE B. HARRIS, District Judge.

This case arises from a complaint filed on January 28, 1970, by the plaintiff, a merchant marine seaman, alleging injuries sustained aboard a vessel because of its unseaworthiness and defendant's negligence. The matter was tried to the court on June 28 and 29, 1972, and thereafter taken under submission for decision.

The court finds and concludes as follows:

Plaintiff Booker T. Moore was born in 1926 in British Guinea. He worked as a merchant marine seaman from 1949, and in the United States from 1953, until he ceased such work in late 1970. In the course of his work plaintiff obtained ratings for several different jobs aboard ship, including that of electrician.

In 1968, plaintiff was employed aboard the SS WHITTIER VICTORY as second electrician. Ratings for electricians do not distinguish between "chief" and "second" or other electricians, and plaintiff had served in the past as a chief electrician as well as second electrician. It was the job of plaintiff as second electrician and of Mr. Gomez, the chief electrician, to attend to the shipboard duties normally assigned to electricians, including the maintenance and repair of electric winches.

On Thursday, July 11, 1968, the SS WHITTIER VICTORY arrived in Qui Nhon, Vietnam. On the following day, beginning at eight a. m., plaintiff and Mr. Gomez attempted to repair a malfunctioning electric winch aboard the ship. In order to gain access to the winch's circuitry, it was necessary to first remove the resistor door covering and protecting the resistor panel. The

metal door, which weighed approximately forty to fifty pounds, fit into place by means of cowlings and was secured by several screws.

Working together, plaintiff and Mr. Gomez proceeded to remove the resistor door. Mr. Gomez then told plaintiff to "put it there," indicating that the door should be moved to a position up against the winch itself and about one foot from the opening to the resistor panel. With the assistance of Mr. Gomez, plaintiff leaned the resistor door against the winch in an upright position and left it there to proceed with his work. The resistor door was left to rest upright on the cowling for the winch, about one foot from the deck and at a slight angle.

Sometime thereafter Mr. Gomez left the work to go to the coffee room. At approximately nine forty-five a. m., plaintiff was gathering together his tools in readiness to leave for the coffee room, when the resistor door fell from its resting place and struck plaintiff on the back of the right leg. Although he was in some pain, plaintiff proceeded to the coffee room. On the way, he came across the chief mate, Mr. Lambert, to whom he mentioned the accident, but Mr. Lambert did nothing for him at that time. Plaintiff did not ask Mr. Lambert for any medical assistance.

Mr. Gomez and others were in the coffee room when plaintiff arrived there, and plaintiff told Mr. Gomez about his accident. After having coffee, plaintiff resumed his work with Mr. Gomez.

At about one p. m., plaintiff went to see Mr. Lambert because of the continued pain in his leg. Mr. Lambert provided plaintiff with an ointment and a support bandage for his leg. Plaintiff then returned to work and continued working until five p. m., when he went ashore. Plaintiff did not seek medical aid while ashore.

Later the vessel left Vietnam and arrived at New Orleans, Louisiana. During the course of that voyage plaintiff continued to perform his duties without interruption. Also during the voyage, and several weeks after the accident, the chief mate prepared a "Report of Illness/Injury" concerning plaintiff's leg injury. The report noted only that bruises were suffered. Plaintiff had received no further medical treatment between the date of the accident and the preparation of the report.

Plaintiff next sought medical attention at the Public Health Service in New Orleans. An examination and x-rays revealed no breaks in plaintiff's leg. The examining doctor at the Public Health Service advised plaintiff to procure a support bandage from the first mate. The doctor found a bruise on plaintiff's leg, but declared him fit for duty.

After stopping at other ports, the vessel returned to Vietnam, where plaintiff consulted an Army doctor. The doctor examined plaintiff and found no sign or indication of bruise or broken bone.

Plaintiff finally left the vessel on November 4, 1968, but gave no indication of any medical reason for leaving. Upon returning to San Francisco, he was examined by a Public Health Service doctor and found fit for duty, with no indications of damage to his right foot. Less than two weeks later, on November 18, 1968, plaintiff returned to the Public Health Service and was declared not fit for duty for one week only after his union representative insisted that he be given same because a return appointment had been made in order for further medical tests to be made. Upon his return appointment, on November 25, plaintiff was again declared fit for duty.

Thereafter, plaintiff did not return to the SS WHITTIER VICTORY, but about two weeks later he did sign aboard another vessel. He continued shipping until December, 1970.

In 1971, plaintiff was examined by a doctor who found that plaintiff suffered from a chronic sprain to his right foot. Plaintiff continues to feel some discomfort at present, but the earlier pain has been alleviated since he no longer goes to sea.

Despite the solicitude courts have traditionally shown for the seaman, and despite the liberality with which awards have been made to them for injuries suffered in the service of the ship, this court can find no basis for making an award of damages herein.

Plaintiff predicates his claims of unseaworthiness and negligence upon the creation of an unsafe place to work which occurred when plaintiff leaned the resistor door against the winch following the direction of Mr. Gomez to do so. The weakness in plaintiff's case is that nothing done in the removal of the resistor door, nor in its placement against the winch, created an unseaworthy condition or was negligent.

Plaintiff readily concedes that the operation in question was routine, both as to necessity and method. Repairing a malfunctioning winch was one of the very tasks plaintiff was hired to do, and it was a task plaintiff had performed numerous times in the past. Plaintiff had removed similar resistor doors on many previous occasions, sometimes without assistance. Although plaintiff testified that he thought it the better practice to put a resistor door at rest by laying it flat on the deck rather than upright against the winch, he admitted that he himself had let resistor doors to rest in the past by leaning them upright and that there was nothing unusual in resting resistor doors in this manner.

■■■ The plaintiff has the burden of proving negligence, Vileski v. Pacific-Atlantic S.S. Co., 163 F.2d 553, 554 (9th Cir. 1947), or of proving unseaworthiness. Reynolds v. Royal Mail Lines, 254 F.2d 55, 57 (9th Cir. 1958), cert. den., 358 U.S. 818, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958); Nosal v. Calmar Steamship Corporation, 339 F.Supp. 1235, 1239 (E.D.Pa.1972). Although the doctrine of unseaworthiness imposes a stricter duty on the vessel owner than does negligence, the test is still whether the place or conditions of work are *reasonably* fit for their intended purpose. The vessel owner is not an insurer and he need not provide an accident-proof

ship. *See* Reinhart v. United States, 457 F.2d 151, 152 (9th Cir. 1972); Freitas v. Pacific-Atlantic Steamship Company, 218 F.2d 562, 564 (9th Cir. 1955).

■■■ This court cannot agree with plaintiff that the leaning of the resistor door upright constituted an unseaworthy or negligent act, or created an unseaworthy or negligent condition or place to work.

■■■ Moreover, even if this court were to find to the contrary, it is manifest that the required causal nexus between unseaworthy or negligent condition and injury is missing. In a word, it was plaintiff's own negligence which was the proximate cause of his injury, not any condition which existed aboard ship. Plaintiff was an experienced seaman and electrician, yet he did not object when told where to place the resistor door. Although a seaman is duty-bound to follow the lawful order of a superior, *see* Hudson Waterways Corporation v. Schneider, 365 F.2d 1012, 1014 (9th Cir. 1966), there is no indication that the direction in question given by Mr. Gomez to plaintiff was any more than a suggestion, or that plaintiff was not free to place the resistor door somewhere other than where it was put.

It is well established that a seaman cannot recover against a vessel for injuries sustained if they were caused proximately and solely by his own negligence. *See* Manning v. M/V Sea Road, 358 F.2d 615, 617–618 (5th Cir. 1965); Williams v. The SS Richard De Larrinaga, 287 F.2d 732, 735 (4th Cir. 1961); Hines v. Bristol City Line (Canada) Ltd., 301 F. Supp. 1394, 1395 (E.D.Pa.1969), affirmed 422 F.2d 668 (3d Cir. 1970).

The case of Oddenes v. Universe Tankships, Inc., 188 F.Supp. 117 (S.D. N.Y.1960), relied on by plaintiff, is readily distinguishable. There, unlike the instant case, the plaintiff second officer had objected to the master's order concerning the rigging of a spring line, but his alternative suggestion had been rejected by the master, who insisted on his original order. Second, the fulfill-

ment of the master's order resulted in a clearly unseaworthy, if temporary, condition, and such condition was found to be a contributing cause to the injuries suffered by the plaintiff there.

Accordingly, judgment is for the defendant, and the action is dismissed. The foregoing shall constitute the court's findings of fact and conclusions of law under Rule 52(a), Federal Rules of Civil Procedure.

It is so ordered.